IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOHN P. DUNBAR, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>JACKY TAKAKURA, *et al.*,<br><br>Defendants. | Civil No. 26-00370 MWJS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING PARTIAL LEAVE TO AMEND |

**INTRODUCTION**

In June of this year, Plaintiff John P. Dunbar, Jr., filed a nomination to run for Mayor of Maui County. That same day, the County—in a letter signed by its Director of Planning Jacky Takakura—closed Dunbar's bed and breakfast permit renewal application. In this lawsuit, Dunbar contends that the closure was retaliation against him for engaging in protected political conduct. The County and Takakura now move to dismiss the complaint, principally contending that the complaint does not allege sufficient facts to support its federal claims and that Dunbar failed to exhaust his state law claims, the substance of which is pending before a county agency.

Although the timing of the closure letter is curious, the court agrees that the complaint in its current form does not support a federal claim for relief. And it further agrees that Dunbar's state law claims are properly dismissed in view of the ongoing

agency proceeding. Defendants' motion to dismiss is therefore GRANTED. But because Dunbar could conceivably address the deficiencies in his federal law claims, their dismissal is with leave to amend. And because Dunbar's state law claims could conceivably become appropriate after the agency proceedings are over, their dismissal is without prejudice to Dunbar requesting permission to reassert them at a future date.

## BACKGROUND

At this motion-to-dismiss stage, the court assumes the following factual allegations are true. Dunbar is the resident, owner, and proprietor of the Maui County Adventure Villa Bed and Breakfast ("B&B") in Haʻikū on Maui, and a candidate for Mayor of Maui County. Dkt. No. 1, at PageID.2. From 2017 to 2023, he operated the B&B under a Bed and Breakfast Home Permit (the "BBHP") issued by Maui County. *Id.* at PageID.3–4. In 2021, the County's Planning Department cited Dunbar for unpermitted construction on the property and imposed a fine of $1,000 per day in violation. *Id.* Dunbar promptly submitted after-the-fact building permit applications to the County that summer, but apparently did not resolve the outstanding fines. *See id.*

In early 2023, Dunbar applied to renew the BBHP so that he could continue to operate his B&B past the looming expiration date of March 30, 2023. *Id.* But on May 8, 2023, the Planning Department notified Dunbar that it deemed his renewal application "automatically incomplete" under Maui County Code § 19.510.010(C)(1) because of the unpaid fines. *Id.* The notice informed Dunbar that his renewal application would

remain incomplete until the unpermitted construction and unpaid fines were resolved. *Id.* It further informed Dunbar that under the Maui County Code, the original permits could remain in effect for up to six months after their original expiration date while their renewal applications were being processed, but that "[i]f documentation of resolution and compliance [was] not provided to the Department by that date, [the] BBPH . . . [would] not be renewed." Dkt. No. 16, at PageID.114 (Letter from Kathleen Ross Aoki, then-Director of Planning, County of Maui, to John Dunbar (May 8, 2023)).[1]

The violations were not, in fact, cured within six months of March 30, 2023. Dkt. No. 1, at PageID.4. But the County continued to "engage with Dunbar on compliance matters," issued the building permits Dunbar sought, and "communicated with Dunbar regarding the status of those permits and their relationship to B&B renewal compliance" after that date. *Id.* at PageID.5. The County also continued to list Dunbar's property on its public-facing listing of all actively permitted bed and breakfast homes. *Id.*

Years later, on May 19, 2026, Dunbar pulled papers to run for Mayor of Maui County. *Id.* And on June 2, 2026, he officially filed his nomination for Mayor. *Id.* at PageID.6. That same June day, the County issued a "Closure Letter" notifying Dunbar

---

[1] For reasons explained below, although Dunbar's complaint itself does not quote this portion of the public letter, the court takes judicial notice of the entirety of the letter (and other materials from his County matter file that are publicly available). Those materials have been placed on this court's docket at Dkt. No. 16.

that because the fines and violations had not been resolved within six months from the expiration date of the BBHP, the BBHP had expired and the renewal applications were "closed." *Id.* One reasonable inference to draw from this letter is that, although Dunbar had been operating his B&B for years past what ordinarily would have been the BBHP's expiration date, if he continued to do so now he would be subject to possible enforcement action.

This lawsuit followed, in which Dunbar names the County and Takakura (in her individual capacity) as Defendants. In his complaint, Dunbar asserts that the Closure Letter was issued in retaliation for his mayoral candidacy, in violation of the First Amendment to the U.S. Constitution. *Id.* at PageID.8–9 (First Claim for Relief). He also alleges that the County's conduct in closing his permits and renewal applications violated his procedural due process rights under the Fourteenth Amendment. *Id.* at PageID.9–10 (Second Claim for Relief). And he brings claims under state law seeking declaratory and equitable relief. *Id.* at PageID.10–14 (Third Claim for Relief).

The County and Takakura move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 7, which Dunbar opposes, Dkt. No. 12. Defendants have also filed a reply in further support of their motion. Dkt. No. 15. The court finds the motion suitable for disposition without a hearing, as authorized by Local Rule 7.1(c).

## LEGAL STANDARD FOR MOTION TO DISMISS

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, Rule 12(b)(6) allows defendants to move to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court must evaluate whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). That analysis follows a two-step process: First, the court must "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of proof." *Iqbal*, 556 U.S. at 679. Second, the court must determine whether the plaintiff's factual allegations, taken as true, "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

### A. The Court Takes Judicial Notice of Certain Materials

Dunbar's three claims all principally concern the Closure Letter. That letter, along with other correspondence that forms part of Dunbar's matter file with the County, are publicly available on Maui County's Automated Planning & Permitting

System (MAPPS) website. *See* https://hi-mauicountymapps.civicplus.com (last visited Nov. 3, 2026). But while Dunbar's complaint describes the Closure Letter and certain features of it, the letter itself is not attached to any pleading or motion on this case's docket. The threshold question is whether the court may consider the full text of the Closure Letter and surrounding materials in resolving the motion to dismiss.

Ordinarily, a court may not consider material beyond the pleadings in evaluating a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. There are, however, two exceptions which allow the court to consider the full Closure Letter here. The first is that a court may consider material that is "not physically attached to the complaint" but whose "authenticity is not contested" and upon which "the plaintiff's complaint necessarily relies." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (cleaned up). The second is that a court "may take judicial notice of 'matters of public record.'" *Id.* (citing Fed. R. Evid. 201). The Closure Letter readily falls under both exceptions: Dunbar's complaint necessarily relies upon it—indeed, revolves around it entirely—and as a publicly available government document it is a matter of public record.

The remainder of the materials in the matter file consist of a Notice of Violation dated April 9, 2021, Dkt. No. 16, at PageID.108–09; emails from July and August 2022, and May 8, 2023, *id.* at PageID.110–11; and a May 8, 2023, letter from then-Planning Director Kathleen Ross Aoki, *id.* at PageID.113–15. Dunbar's complaint does not appear

to rely on these materials to the same extent as the Closure Letter, but they, too, appear to constitute incontrovertible matters of public record.

To afford the parties an opportunity to be heard on this issue, the court docketed these materials on October 30, 2026, Dkt. No. 16, and indicated to the parties that it intended to take judicial notice of them, Dkt. No. 17. It invited either party to submit an objection to judicial notice by November 5, 2026, *id.*, and no party did so.

Given that two exceptions authorize the court to consider the Closure Letter, and at least one authorizes its consideration of the rest of the materials at Dkt. No. 16, and given the absence of any objection, the court will take judicial notice of the Closure Letter, the April 2021 Notice of Violation, and the May 2023 letter. Because the emails, *id.* at PageID.110–11, do not add any necessary context or offer any support to Dunbar's complaint, the court will not consider them at this time.

To be clear, even after taking judicial notice of these documents at this motion-to-dismiss stage, the court continues to accept all of Dunbar's factual allegations as true and draws all inferences (including in understanding these documents) in the light most favorable to Dunbar. Importantly, the materials at Dkt. No. 16 do not contradict any of Dunbar's factual allegations; they simply fill out some of the surrounding factual circumstances, much of which is already implied in the silences of Dunbar's complaint.

Having explained why and to what extent the court is taking judicial notice of the documents filed at Dkt. No. 16, the court turns to the merits of Defendants' motion.

**B. The Complaint's Federal Claims Must Be Dismissed**

Dunbar's federal claims are brought under 42 U.S.C. § 1983, which provides a private cause of action against any person who, acting under color of state law, deprives someone of their rights under the U.S. Constitution or federal law. To prevail on a § 1983 claim, a plaintiff must establish "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Dunbar contends that his constitutional rights have been violated by state actors in two ways: through First Amendment retaliation and a violation of procedural due process. Dkt. No. 1, at PageID.8–10.

In their motion, Defendants contend that the complaint in its current form fails to allege facts sufficient to plausibly allege either violation. The court agrees.

**1. First Amendment Retaliation**

Start with Dunbar's First Amendment retaliation claim. To make out this claim, Dunbar's complaint must allege sufficient factual matter to establish three elements: that "(1) [the plaintiff] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858,

867 (9th Cir. 2016).

In its current form, Dunbar's complaint plausibly alleges the first two elements, but does not adequately allege the third.

**a. Protected Activity**

The first element, naturally enough, is that the activity at issue must be protected by the First Amendment. And Dunbar asserts that his candidacy for Mayor of Maui County, or at least his "concrete campaign speech, political association, and public opposition to the incumbent administration," constitute protected activity under the First Amendment. Dkt. No. 1, at PageID.5; Dkt. No. 12, at PageID.66.

Defendants do not quite dispute Dunbar's assertion, though they suggest that "it is not clear whether candidacy for public office is itself a constitutionally protected activity." Dkt. No. 7-1, at PageID.38. But it is clear enough. Running for office necessarily is comprised of protected associational and speech activities subject to First Amendment protection, and therefore is itself a protected activity. That is why, as the Ninth Circuit has explained, "[d]isciplinary action discouraging a candidate's bid for elective office 'represent[ed] punishment by the state based on the content of a communicative act' protected by the first amendment." *Finkelstein v. Bergna*, 924 F.2d 1449, 1453 (9th Cir. 1991) (quoting *Newcomb v. Brennan*, 558 F.2d 825, 828–29 (7th Cir. 1977)). And it is why, "[a]s the Supreme Court has found, [t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political

office." *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 744–45 (9th Cir. 2012) (cleaned up). Because Dunbar's filing of his official nomination for mayor was a constitutionally protected activity, his complaint adequately alleges the first element of the First Amendment retaliation claim.

### b. Chilling Effect

The second element of a First Amendment retaliation claim is that a government defendant's actions must be sufficient to chill a person of ordinary firmness from continuing to engage in the protected activity. Defendants take aim at this element, arguing that Dunbar's complaint is deficient because it "fail[s] to allege . . . how the alleged adverse action by Director Takakura" would have had that effect. Dkt. No. 7-1, at PageID.41.

But "the pleading standard Rule 8 announces does not require 'detailed factual obligations,'" and the court may "draw . . . reasonable inference[s]" from the facts alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Accepting the complaint's factual allegations as true and drawing all reasonable inferences in its favor, the closure of Dunbar's permit renewal application is sufficient to chill a person of ordinary firmness from filing to run for office and engaging in related speech. The Ninth Circuit has held that suspension of business permits can constitute an adverse action sufficient to plead a claim of First Amendment retaliation. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). And while the underlying permits here had

"technically expired," Dkt. No. 7-1, at PageID.34, the complaint alleges that the County took no enforcement action against Dunbar for nearly three years after their expiration, continued to engage with Dunbar on resolving the Notices of Violation in order to facilitate renewal of the permits, and even continued to include Dunbar's B&B on a published list of active B&B permits. Dkt. No. 1, at PageID.4–5.

Against that backdrop, the Closure Letter resembles a threat of enforcement, prior to which Dunbar reasonably expected none. A person of ordinary firmness may seriously rethink pulling papers to challenge an incumbent mayor if he believed that the administration would immediately begin enforcement action against him on a violation it had ignored for years. Thus, Dunbar has adequately alleged the Closure Letter's chilling effect.

**c. Causation**

That leaves one final element—causation—and this is where Dunbar's complaint runs into trouble. Defendants assert that "[t]he only nexus plead[ed] is that on the same day that Plaintiff filed his candidacy documents with the County Clerk, the Planning Department issued the Closure Letter," and that "[t]he Complaint is devoid of any other reason or nexus between the filing of candidacy papers and the issuance of the Closure Letter." Dkt. No. 7-1, at PageID.40–41. Defendants further assert that "Plaintiff omits the actual reason for the closure: the permit had expired in 2023, and the County finally decided not to wait any longer for Plaintiff to pay the outstanding fines." Dkt. No. 15,

at PageID.100.

Defendants' causation arguments are not persuasive in all respects. To the extent Defendants merely argue that there may have been a legitimate reason for their actions, that alone is not sufficient. As the Ninth Circuit has cautioned, "the mere existence of a legitimate motive . . . is insufficient to mandate dismissal." *Capp v. County of San Diego*, 940 F.3d 1046, 1056 (9th Cir. 2019). Where defendants "merely establish[] that they *could* have suspended the permits" but do not show "that they would have reached the same decision in the absence of the protected conduct," a plaintiff's case must be allowed to proceed. *Soranno's Gasco*, 874 F.2d at 1315; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977). Particularly at the pleading stage, even a wholly plausible alternative explanation cannot be elevated above well-pleaded factual allegations that raise a plausible inference of an unlawful motive.

Meanwhile, Defendants' protest that timing is the only nexus pleaded between the candidacy and the Closure Letter is not convincing. The Ninth Circuit has recognized that "in some cases, causation can be inferred from timing alone where [alleged retaliation] follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). And "evidence based on timing can be sufficient to let the issue go to the jury, even in the fact of alternative reasons proffered by the defendant." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). Indeed, the Ninth Circuit has upheld causal inferences based on

timing alone in cases where allegedly retaliatory action occurred weeks to months after the protected activity. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). At least at this early stage of the case, then, the timing of the Closure Letter—issued "on the very day Plaintiff submitted his candidacy papers," Dkt. No. 15, at PageID.100—could support an inference of retaliatory motive sufficient to preclude dismissal of Dunbar's complaint.

But before a rational factfinder can infer causation based on timing, they must find that the relevant decisionmaker knew about the plaintiff's constitutionally protected activity. *See Yartzoff*, 809 F.2d at 1376 ("Causation . . . may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities *and* the proximity in time between the protected action and the allegedly retaliatory employment decision." (emphasis added)). That is because, if a relevant decisionmaker is not shown to have been aware of a party's protected activity, then temporal proximity is not plausibly more than a coincidence. To make out a claim against the County, then, Dunbar must plausibly allege that a relevant decisionmaker knew about his candidacy before she signed the Closure Letter. And to make out a claim against Takakura, Dunbar must plausibly allege that Takakura knew about it.

Dunbar does not clear these hurdles. He asserts only that Takakura "serves at the pleasure of Mayor Bissen," Dkt. No. 1, at PageID.9, and, in his opposition to

Defendants' motion, that "the public nature of his candidacy" and the suspicious timing of the Closure Letter indicate "that the Department was aware of Plaintiff's political activity before issuing the Closure Letter," Dkt. No. 12, at PageID.69. But the fact that information is public does not, without more, suffice to impute knowledge of that information to any individual. Many things are public without being notoriously so. And many people—even senior government officials—are at times unaware of even notoriously public matters. So without further factual allegations about the precise ways in which Dunbar's candidacy became public, or about factual circumstances that might lead one to reasonably infer that Takakura was aware of it, the complaint does not offer enough to support a finding of knowledge. And while the timing here could perhaps support an inference that *somebody* knew about Dunbar's candidacy and acted in response, it does not establish that anyone in particular—whether Takakura or any other person with policymaking authority sufficient to hold the County liable—was that person.

Accordingly, the facts alleged in the complaint do not, at present, permit the court to reasonably infer that Takakura issued the Closure Letter because of Dunbar's protected activity. Nor does the complaint identify any other policymaker for whose conduct the County could be held liable. The complaint thus does not plausibly allege the causation element, and for that reason, Dunbar's First Amendment retaliation claim must be dismissed.

**2. Procedural Due Process**

In his second claim for relief, Dunbar asserts that he "had a protected property interest in the B&B Permits and in the pending Renewal Application" and that the County deprived him of those interests without constitutionally adequate process. Dkt. No. 1, at PageID.9–10. Dunbar identifies several alleged deficiencies in the letter. Defendants, for their part, say that Dunbar's procedural due process claim is "a threadbare, conclusory allegation that fails to set forth any plausible claim" of a due process violation. Dkt. No. 7-1, at PageID.41.

To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (cleaned up). In determining whether process is adequate, courts typically look to the test articulated in *Mathews v. Eldridge*, which balances (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used," (3) "the probable value, if any, of additional or substitute procedural safeguards," and (4) "the Government's interest." 424 U.S. 319, 335 (1976).

It is far from apparent that Dunbar had a protected property interest in either the renewal of his permit or the continued processing of his renewal application. Dunbar was on notice as early as May 2023 that, as the County put it in a letter to him, his BBHP

"[would] not be renewed" if the violations and unpaid fines were not resolved by six months from the underlying permits' March 2023 expiration dates. Dkt. No. 12, at PageID.74. Dunbar argues that the May 2023 letter's statement that the application "'[would] remain in incomplete status"—which he takes to mean indefinitely, regardless of the status of the underlying permits—"'until' the [Notice of Violation] issues were resolved and fines were paid" conflicted with the admonition that the permits would not be renewed if the issues were not resolved within six months of March 2023. *Id.* But Dunbar's proposed reading of the May 2023 letter is strained; the more natural reading is that his renewal applications would "remain in an incomplete status" only until six months after the expiration dates in March 2023, after which they would "not be renewed." Dkt. No. 16, at PageID.114.

But assume that Dunbar's reading of the letter is the better one, meaning that the County conveyed the inconsistent message that it would keep his renewal applications indefinitely in an "incomplete status" but that he also only had until six months from March 2023 to resolve the violations and unpaid fines. Even then, Dunbar still had sufficient notice that adverse consequences *might* result, and that he was assured no more than six months from March 2023 to cure the violations without risking those consequences. The fact that the County ended up giving him several years more—that he was allowed to operate under the expired permit for several years after the County could have begun enforcement—does not mean that he had secured a procedural due

process right to have the County continue to stay its enforcement hand.

Even if Dunbar had identified some protected property interest, moreover, the *Eldridge* factors still favor dismissal of his procedural due process claim on the factual allegations presented here. The fact that Dunbar can appeal—and indeed, has appealed—the Closure Letter to the Board of Variances and Appeals (the "Board"), *see* Dkt. No. 1, at PageID.10, means that he has access to post-deprivation process as well. Dunbar has not alleged that the Board proceedings provide inadequate process. Nor has he alleged that correcting the purported deficiencies in the Closure Letter would reduce the risk of erroneous deprivation; he does not even allege that the outcome in his particular case would have been different. In short, Dunbar has not pleaded facts sufficient to give rise to an inference that his right to procedural due process has been violated. This claim, too, must be dismissed.

**C. The Complaint's State Law Claims Must Be Dismissed**

Dunbar's final claims are for declaratory and equitable relief under state law. This court has supplemental jurisdiction to consider Dunbar's state law claims because they share a common nucleus of operative fact with his federal claims—namely, the sequence of events culminating in the Closure Letter. *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Defendants nonetheless assert that this relief is premature as Dunbar has not yet exhausted administrative remedies. Dunbar does not appear to contest that characterization. *See* Dkt. No. 12, at PageID.80–82.

Instead, he requests that the court stay these state law claims pending resolution by the Board. *Id.*

The court declines to determine whether exhaustion is necessarily required on these facts or to stay the state law claims because, under Hawaiʻi state law, "[i]t is well-settled that courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding to which the same persons are parties and in which the same issues may be adjudicated." *Haas & Haynie Corp. v. Pac. Millwork Supply, Inc.*, 627 P.2d 291, 293, 2 Haw. App. 132, 133–34 (Haw. Ct. App. 1981). Although Hawaiʻi state law does not necessarily control this court's authority to grant equitable relief, the court may properly take it into account in deciding how to exercise its own discretion. And in the face of that well-settled state law practice, the ongoing proceedings before the Board provide enough reason to decline to entertain Dunbar's state law claims at this time. The claims are therefore dismissed, but because Dunbar may have a valid state law claim at some point in the future, the dismissal is without prejudice to his reasserting the claims in a future proceeding.

### D. Dunbar Is Granted Leave to Amend

As all of the claims in Dunbar's complaint must be dismissed, the remaining question is whether Dunbar should be afforded an opportunity to file an amended complaint to address the deficiencies in his initial pleading. Under Federal Rule of Civil

Procedure 15(a)(2), the court "should freely give leave when justice so requires." And that rule "is particularly important for the pro se litigant." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). For that reason, "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Id.* (quoting *Broughton v. Cutter Lab'ys*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)).

The deficiencies in Dunbar's federal claims could conceivably be cured by amendment. Accordingly, the court grants leave to amend as to these claims (*i.e.*, the first and second claims for relief). The court does not grant leave to amend the state law claims (*i.e.*, the third claim for relief) at this time, but its dismissal is without prejudice, and Dunbar remains free to seek leave to amend (or to file a new lawsuit) once the ongoing Board proceedings have run their course.

Dunbar is not authorized to add any new claims for relief or any new Defendants without further leave of court. Any amended complaint must only seek to address the deficiencies in his first and second claims for relief.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Dkt. No. 7, is GRANTED IN PART and DENIED IN PART. Dunbar's first and second claims for relief are DISMISSED with leave to amend. His third claim for relief is DISMISSED WITHOUT PREJUDICE.

If Dunbar elects to file an amended complaint, he must comply with the following requirements:

(1) The deadline to file an amended complaint is December 15, 2026;

(2) The amended complaint must be titled "First Amended Complaint"; and

(3) Dunbar must cure the deficiencies identified above, but may not add new Defendants or claims for relief without further leave of court.

Dunbar is cautioned that failure to timely file an amended pleading that conforms with this order will result in the automatic dismissal of this action.

IT IS SO ORDERED.

DATED: November 13, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge